# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3789 | **DATE** | 11/7/2003 |
| **CASE TITLE** | Pierce-Daniels vs. Potter | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]    For the reasons set for on the attached Memorandum Opinion and Order, the Court denies Pierce-Daniels' partial motion for summary judgment (47) and grants Potters' motion for summary judgment in its entirety (49). Judgement is entered in favor of the defendant. The trial date of 1/5/04 is vacated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | **NOV 12 2003** | 63 |
| ✓ | Docketing to mail notices. | | date docketed | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | 03 NOV 10 AM 4:45 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| JANICE L. PIERCE-DANIELS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 01 C 3789 |
| | ) | |
| JOHN E. POTTER, Postmaster General, | ) | |
| United States Postal Service, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Janice L. Pierce-Daniels sued her employer, John E. Potter, the Postmaster

General of the United States Postal Service, alleging in her Fourth Amended Complaint twenty-

six incidents of retaliation, harassment and race, sex and disability discrimination in violation of

Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e et seq., Title I of the

American with Disabilities Act, 42 U.S.C. § 12101 et seq., and the Rehabilitation Act of 1973,

29 U.S.C. § 701 et seq.[1] Potter filed a motion for summary judgment on all of Pierce-Daniels'

claims; Pierce-Daniels filed a motion for summary judgment on her claim that her position was

abolished and she was reassigned to a less desirable job in retaliation for activity protected under

---

[1] Attorneys Craig Penrose and John P. Maniatis of Tressler, Soderstrom, Maloney &
Priess were appointed to represent Pierce-Daniels. The Court thanks counsel for their diligent
work on plaintiff's behalf.

Title VII.[2]  For the reasons stated below, the Court denies Pierce-Daniels' motion for summary

judgment and grants Potter's motion for summary judgment.

### Legal Standard

Summary judgment is proper when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c).  The Court evaluates admissible evidence in the record in

the light most favorable to the nonmoving party. *Bennett v. Roberts*, 295 F.3d 687, 694 (7th Cir.

2002).  But "[t]he nonmovant will successfully oppose summary judgment only when it presents

'definite, competent evidence to rebut the motion.'" *Vukadinovich v. Bd. of Sch. Tr. of N.*

*Newton Sch. Corp.*, 278 F.3d 693, 699 (7th Cir. 2002) (citation omitted).  "The mere denial of a

particular fact without specific references to affidavits, parts of the record, and other supporting

materials is insufficient, and, where a properly supported factual assertion is met with such a

naked denial, the fact may be deemed admitted." *Fuller v. Caterpillar Inc.*, 124 F. Supp. 2d 610,

614 (N.D. Ill. 2000).  Furthermore, "neither the mere existence of some alleged factual dispute

between the parties nor the existence of some metaphysical doubt as to the material facts is

sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Group, Inc.*,

---

[2] In her Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment, Pierce-Daniels moves for summary judgment "only on her charge that she was transferred from a secretarial/receptionist position of clerk stenographer at the main post office to a less desirable position of a manual labor clerk type job at the Roseland Postal Facility in retaliation for filing previous EEO complaints." Pl.'s Mot. at 1.  However, in her Fourth Amended Complaint, she claims the transfer constituted both retaliation and discrimination.  Because Potter moves for summary judgment on all claims raised in the Fourth Amended Complaint, the Court will consider the transfer under theories of retaliation *and* discrimination.

2

129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotation marks omitted).

Pierce-Daniels alleges retaliation, harassment and discrimination on the basis of race, color, sex, whistle-blower status and disability. The controlling standard for proving retaliation was articulated by the Seventh Circuit in *Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). Under *Stone* the plaintiff can proceed under the direct method of proving retaliation or by the indirect method of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Stone*, 281 F.3d at 644. If the plaintiff proceeds under the direct method, she must either produce direct evidence – "i.e., evidence that, if believed by the trier of fact, would prove the fact in question 'without reliance on inference or presumption'"– or circumstantial evidence – "i.e., evidence that allows a jury to infer intentional discrimination by the decisionmaker." *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003) (citations omitted). If the direct or circumstantial evidence presented by the plaintiff is not contradicted, "the plaintiff is entitled to summary judgment." *Stone*, 281 F.3d at 644. However, "[i]f it is contradicted, the case must be tried unless the defendant presents unrebutted evidence that he would have taken the adverse employment action against the plaintiff even if he had had no retaliatory motive; in that event the defendant is entitled to summary judgment because he has shown that the plaintiff wasn't harmed by retaliation." *Id.* If the plaintiff proceeds by way of the *McDonnell Douglas* indirect method of proof, she must provide evidence that "after filing the charge only [s]he, and not any similarly situated employee who did not file a charge, was subjected to an adverse employment action even though [s]he was performing h[er] job in a satisfactory manner." *Id.* If the plaintiff makes out a prima facie case, the burden shifts to the defendant to provide a "noninvidious reason for the adverse action." *Id.* Summary judgment is appropriate only if the

plaintiff fails to rebut the reason given by the defendant for the action. *Id.*

Pierce-Daniels also alleges race, color, sex and disability discrimination. For her discrimination claims to survive summary judgment, she must either come forth with direct evidence of discrimination or proceed under the *McDonnell Douglas* indirect method of proof. *See, e.g., Dyrek v. Garvey*, 334 F.3d 590, 598 (7th Cir. 2003) (applying the *McDonnell Douglas* approach to employment discrimination claims brought under Title VII, the ADA and the Rehabilitation Act). "Under the *McDonnell Douglas* framework, a plaintiff bears the initial burden of producing evidence to sustain a prima facie case." *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 742 (7th Cir. 1999). To establish a prima facie case of discrimination, the plaintiff must show that: "(1) [s]he belongs to a protected class, (2) [s]he performed h[er] job according to h[er] employer's legitimate expectations, (3) [s]he suffered an adverse employment action, and (4) similarly situated employees outside the protected class were treated more favorably by the defendant." *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 885-86 (7th Cir. 2001) (applying the *McDonnell Douglas* test to an age and race discrimination claim). If the plaintiff makes out a prima facie case of discrimination, "the employer must then produce evidence of a legitimate, nondiscriminatory reason for his action. If the employer offers a legitimate, nondiscriminatory reason, the burden then shifts back to the plaintiff to present evidence that the employer's proffered reason is pretextual." *Johnson*, 170 F.3d at 742. Thus the elements necessary to make out a case of discrimination by indirect proof are similar to those needed to make out a case of retaliation by indirect proof.

Because Potter's primary argument for summary judgment is that Pierce-Daniels cannot establish a prima facie case of retaliation or discrimination, the Court finds it prudent to set forth

4

what constitutes an "adverse action" and a "similarly situated employee" when the indirect proof method is used. Pierce-Daniels argues that acts that might not constitute an adverse employment action in a discrimination case may qualify as an adverse action in a retaliation case. Pl.'s Resp. at 11. She relies on *Herrnreiter v. Chicago Housing Authority*, in which the Seventh Circuit stated as dicta that "[w]e do not mean to suggest . . . that retaliation, to be actionable under Title VII (or other statutes), has to involve an adverse employment action. It does not." 315 F.3d 742, 745 (7th Cir. 2002). Potter argues that to the extent that dicta can ever be relied on as precedent, the Seventh Circuit's discussion in *Herrnreiter* means only that an adverse retaliatory action – unlike an adverse discriminatory action – does not have to be employment related. Def.'s Reply at 13. All of the harms complained of by Pierce-Daniels involve employment actions. The Seventh Circuit has declined to determine whether an act of retaliation that "*does* take the form of an employment action" must be "as severe as would be required if the action were charged as discrimination rather than as retaliation." *Herrnreiter*, 315 F.3d at 746 (emphasis in original). But recently in *Johnson v. Cambridge Indus., Inc.*, the Seventh Circuit emphasized that even if a "more generous standard" governs retaliation cases, "the employee must complain of some action on the employer's part that causes her to suffer a real harm." 325 F.3d 892, 902 (7th Cir. 2003). Because the Court will evaluate Pierce-Daniels' claims under this "real harm" standard, we do not find *Herrnreiter* requires us to evaluate the alleged employment actions differently under Pierce-Daniels' retaliation and discrimination theories.

The parties do not dispute that the standard of identifying a similarly situated employee does not vary depending on whether the plaintiff is alleging discrimination or retaliation. To demonstrate that co-employees were similarly situated to her, Pierce-Daniels does not have to

show "complete identity in comparing [her]self to the better treated employee, but [s]he must show substantial similarity." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000) (citation omitted). To do this, she must show that she and the better-treated employees "dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* at 617-18 (citation omitted). The Court notes that the existence of similarly situated employees who were treated more favorably than the plaintiff not only satisfies one of the elements necessary to make out a prima facie case of discrimination, but can also be offered by the plaintiff to show that the defendant's proferred reason for taking the action against the plaintiff is pretextual. *Gordon*, 246 F.3d at 892; *see, e.g., Stalter v. Wal-Mart Stores, Inc.*, 195 F.3d 285, 290-91 (7th Cir. 1999) (finding plaintiff had provided evidence of pretext in part by pointing out that a similarly situated employee who was outside the protected class had not been terminated even though the plaintiff was fired for committing a less severe offense).

Pierce-Daniels alleges harassment in ¶¶ S, U and Y of her Fourth Amended Complaint. "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (citations and internal quotation marks omitted). Pierce-Daniels alleges that Linda Patterson, her manager from March 1996 to August 2002, harassed her. The fact that Pierce-Daniels and her alleged harasser are of the same gender does not defeat her claim. "[N]othing in Title VII necessarily bars a claim of discrimination 'because of . . . sex' merely because the

6

plaintiff and the defendant (or the person charged with acting on behalf of the defendant) are of the same sex." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 79 (1998). However, Pierce-Daniels must show that Patterson's actions were motivated by gender, race, or another status protected by Title VII. *Vore v. Indiana Bell Telephone Co.*, 32 F.3d 1161, 1162 (7th Cir. 1994). "Inappropriate conduct that is inflicted regardless of sex [] is outside the statute's ambit, and an employer cannot be held liable for creating or condoning a hostile working environment unless the hostility is motivated by gender." *Berry v. Delta Airlines, Inc.*, 260 F.3d 803, 808 (7th Cir. 2001) (citations and internal quotation marks omitted). Thus Pierce-Daniels must show Patterson's actions were motivated by something more than personal dislike. *Vore*, 32 F.3d at 1162. Furthermore, "rude, arrogant, or boorish behavior at work" alone does not create an actionably hostile work environment. *Patton v. Indianapolis Public School Board*, 276 F.3d 334, 339 (7th Cir. 2002).

Applying the legal standards articulated above, the Court finds Pierce-Daniels' claims are without merit.

## Analysis

Pierce-Daniels raises twenty-six claims of mistreatment that she argues constituted retaliation, harassment *and* discrimination on the basis of race, color, age, religion, disability and status as a whistleblower. The Court notes at the outset of its analysis that even though Pierce-Daniels' Fourth Amended Complaint seems to offer retaliation and discrimination as distinct theories of recovery for each enumerated claim, she does not discuss the two theories separately. However, to avoid any ambiguity in our final ruling, the Court will evaluate each claim under both theories. For each claim, not all of the *McDonnell Douglas* elements are in dispute. For

purposes of summary judgment, Potter admits that Pierce-Daniels was performing her job satisfactorily. Def.'s Mot. at 12. Potter also does not dispute that Pierce-Daniels engaged in the protected conduct of filing EEO complaints ( Def.'s Mot. at 12) and is an African-American woman, which places her in a protected class. Def.'s Facts ¶ 1. Potter argues that Pierce-Daniels does not qualify as a disabled person under the Rehabilitation Act. Def.'s Mot. at 17-18. But as the Court will explain, even if Pierce-Daniels is disabled, and therefore within a third protected class, she could not prevail on a claim of disability discrimination, because she has failed to show that similarly situated employees who were not disabled were treated more favorably. Thus, for the purposes of our analysis, the Court will assume that Pierce-Daniels can establish two of the elements that are necessary to make out a prima facie case of retaliation and discrimination.

1. **Claims enumerated in ¶¶ 6A through 6I and 6L**

Potter moves for summary judgment on ten claims that Pierce-Daniels has already settled or litigated. Pierce-Daniels responds that "these allegations were merely submitted to show a continuing pattern of discrimination." Pl.'s Resp. at 2. To clarify any ambiguity as to whether these 10 claims, which were listed in Pierce-Daniels' Fourth Amendment Complaint, are actionable and to prevent any future confusion, the Court considers Potter's arguments and grants his motion for summary judgment on these claims.

On March 31, 1987, Pierce-Daniels and the Postal Service settled all EEO claims that she had filed prior to that date, including claims ¶¶ 6A through 6H of her Fourth Amended Complaint. Def.'s Facts ¶ 3. As part of the settlement, Pierce-Daniels waived her right to raise these claims in any forum. *Id.* "It is clear that a plaintiff may waive a claim under Title VII . . . as part of a voluntary settlement, provided that her consent to the release was voluntary and

knowing." *Wagner v. NutraSweet Co.*, 95 F.3d 527, 532 (7th Cir. 1996) (citations omitted). Pierce-Daniels does not argue that she did not voluntarily enter into the settlement of her claims. Therefore, she is barred from litigating the eight claims she settled in 1987. Potter's motion for summary judgment on claims ¶¶ 6A through 6H is granted.

On February 4, 1994, Pierce-Daniels filed suit in *Pierce v. Runyon*, 94 C 924 (N.D. Ill.), raising the same claims listed in her Fourth Amended Complaint as ¶¶ 6I and 6L. Pl.'s Add'l Facts ¶ 16; Def.'s Facts ¶ 5. Judge George Lindberg granted summary judgment to the Postal Service. Def.'s Facts ¶ 5. Pierce-Daniels admits that *"res judicata* would arguably apply." Pl.'s Resp. at 2. "[R]es judicata, or claim preclusion, applies to bar a second suit in federal court when there exists: (1) an identity of the causes of actions; (2) an identity of the parties or their privies; and (3) a final judgment on the merits." *Kratville v. Runyon*, 90 F.3d 195, 197 (7th Cir. 1996) (*citing Golden v. Barenborg*, 53 F.3d 866, 868 (7th Cir. 1995)). The parties in this case are identical to those in *Pierce v. Runyon* – Pierce-Daniels and the Postmaster General. Paragraphs 6I and 6L raise the exact same claims that Pierce-Daniels litigated in *Pierce v. Runyon*, *see* Def.'s Facts ¶¶ 4-5; Pl.'s Add'l Facts ¶¶ 10-16, and Judge Lindberg rendered a decision on the merits. Therefore, Pierce-Daniels is barred from relitigating the claims raised in her Fourth Amendment Complaint as ¶¶ 6I and 6L. The Court grants Potter's motion for summary judgment on these two claims.

## 2.     Claims ¶¶ 6J and 6K

Potter moves for summary judgment on claims ¶¶ 6J and 6K, arguing Pierce-Daniels failed to exhaust her administrative remedies before filing this suit. Pierce-Daniels concedes that "federal employees (such as her) are required by administrative regulation to engage in various

administrative remedies, including EEO counseling and investigation within the federal agency and an actual administrative hearing before an [administrative law judge]." Pl.'s Resp. at 1 (citing 29 C.F.R. § 1614 *et seq.*) More specifically, federal employees must contact an EEO counselor within 45 days of the alleged discriminatory action. 29 C.F.R. § 1614.105(a)(1). "If the matter has not been resolved," the employee has 15 days to file a complaint from the day she receives notice that she may do so. *Id.* § 1614.105(d). Potter points out that Pierce-Daniels never filed a formal EEO complaint about the conduct alleged in ¶¶ 6J and 6K. Def.'s Mot. at 10. Pierce-Daniels responds by saying that her complaint had been discussed during an administrative hearing on another employee's complaint. Pl.'s Resp. at 3. This is not sufficient to comply with the requirements of 29 C.F.R. § 1614.105. The Court grants Potter summary judgment on claims ¶¶ 6J and 6K.

### 3. Claim ¶ M

In ¶ M of her Fourth Amended Complaint, Pierce-Daniels claims that the Postal Service retaliated and discriminated against her when it abolished her clerk/stenographer position and reassigned her to the Roseland Station as a distribution clerk. In October 1981, Pierce-Daniels obtained a job as a clerk/steno and was assigned to the Business Mail Entry unit ("BME") five months later. Pl.'s Add'l Facts ¶¶ 8-9. Pierce-Daniels filed an EEO complaint against the Postal Service in 1991. On February 4, 1994, Pierce-Daniels filed a lawsuit in the Northern District of Illinois, *Pierce v. Runyon* (94 C 924), after an administrative law judge rejected her 1991 claim of discrimination. *Id.* ¶ 16. On March 1, Harvey Walden, senior labor relations specialist, sent Pierce-Daniels a letter stating that her clerk/steno position had been abolished and she would be reassigned effective March 5. *Id.* ¶ 17.

John Richardson, the manager of human resources for the Chicago Performance Cluster, explained that the Postal Service headquarters in Washington, D.C., had sent word to Chicago that as part of a national restructuring, it was reducing the number of administrative positions – those jobs that did not involve touching the mail. Richardson Dep. at 35. The Postal Service distributed a document called the "organization of management staffing structure," referred to as the OMSS, that listed all the authorized positions for each branch of the Postal Service. *Id.* at 15. The OMSS list did not authorize a clerk/steno position for BME. Def. Ex. J. BME was part of the Customer Service Support District. In March 1993, the vice president of customer service sent out a memo to all managers directing that "[e]mployees who previously held positions that did not carry over into the new structure or the number of positions downsized was due to workload reduction should have their positions abolished and be made unencumbered regulars in accordance with the applicable provisions of the National Agreement." Def. Ex. H. A November 12, 1993 memo circulated to managers asked them to identify all employees whose positions had been abolished because the Postal Service had "not yet been successful in achieving [its] overhead reduction goal." Def. Ex. K. On January 13, 1994, Ken Britton, the manager of customer service support, informed Richardson in writing that, "As per Mr. Mason's commitment to the Great Lakes Area to eliminate two additional craft positions in Customer Service Support, I am requesting that Human Resources abolish the unauthorized Clerk/Steno position in Business Mail Entry and revert the vacant General Clerk position in Consumer Affairs as soon as possible." Def. Ex. L.

When Walden wrote Pierce-Daniels to inform her that her clerk/steno position had been abolished, he "encouraged" her "to bid on posted duty assignments." Def. Ex. N. He explained

11

that "[i]f you do not bid, or you are an unsuccessful bidder, you will be assigned to a residual vacancy." *Id.* There is no evidence that Pierce-Daniels bid on any job assignments. On March 28, 1994, Walden sent her another letter, stating she had been reassigned to the Roseland Station as a distribution clerk. Def. Ex. P. Pierce-Daniels began working at Roseland Station on April 16, 1994. Pl.'s Add'l Facts ¶ 20.

Both Pierce-Daniels and Potter move for summary judgment on her claim that the Postal Service retaliated and discriminated against her when it abolished her clerk/steno position and reassigned her to the Roseland Station as a distribution clerk. Pierce-Daniels has "two (and only two) distinct routes to obtaining/preventing summary judgment." *Stone*, 281 F.3d at 644. If she chooses the direct method of proving her case, she must come forward with direct or circumstantial evidence of retaliation (or discrimination). *Id.*; *Rogers*, 320 F.3d at 753. If the defendant does not contradict the evidence, Pierce-Daniels is entitled to summary judgment unless the defendant can show that her position would have been abolished and she would have been reassigned even without the retaliatory (or discriminatory) motive. *Stone*, 281 F.3d at 644. If Pierce-Daniels chooses to proceed under the indirect — or *McDonnell Douglas* – method of proof, she must make out a prima facie case of retaliation or discrimination. However, if the defendant offers a nondiscriminatory or nonretaliatory explanation for the job action, Pierce-Daniels is entitled to summary judgment only if she can prove that the proffered reason is pretextual. *Id.* The Postal Service argues that Pierce-Daniels' clerk/steno position was abolished as part of national restructuring to eliminate overhead positions and she was reassigned to Roseland Station because she declined to bid for another position. If Pierce-Daniels cannot make out a prima facie case or cannot rebut the Postal Service's reason for the job abolishment and

12

reassignment, Potter is entitled to summary judgment.

Pierce-Daniels argues she is entitled to summary judgment because she has direct evidence that her job was abolished and she was transferred to Roseland Station in retaliation for the charges she filed against the Postal Service. Pl.'s Mot. at 11. The sole evidence Pierce-Daniels points to as direct evidence of retaliation is a statement written by Patterson dated December 20, 2001. In the statement, which Patterson's manager asked her to right after one of her disputes with Pierce-Daniels, she wrote: "Ms. Daniels states that she has requested to be reassigned several times. I was not aware of these requests. She was originally assigned to this station due to an EEO complaint filed against a former Postmaster and others." Pl.'s Ex. 4. However, Patterson has provided a declaration signed on September 23, 2003 stating that she did not know why Pierce-Daniels was transferred to Roseland Station. Def.'s Resp. Ex. D at 1. She offered an explanation for her previous statement: "Janice Pierce Daniels let it be known that the reason she was transferred to the Roseland Station was because she had filed an EEO complaint. So when I wrote a Personal Statement, dated December 20, 2001, . . . I merely repeated what Ms. Pierce-Daniels had been stating, which was that she was transferred to Roseland because she had filed an EEO against a former Postmaster." *Id.* at 2.

Potter argues that Patterson's 2001 statement is not direct evidence of retaliation because she was not party to the decision to abolish Pierce-Daniels' position or transfer her to Roseland Station. Def.'s Resp. at 8. "Direct evidence 'essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus.'" *Rogers*, 320 F.3d at 753 (citation omitted). Patterson did not make the decision regarding Pierce-Daniels clerk/steno position and transfer. In fact, Pierce-Daniels was transferred to Roseland Station two years

13

before Patterson became acting station manager there. Ken Britton, manager of customer service, made the final decision to abolish Pierce-Daniels' position. Pl.'s Add'l Facts ¶ 24; Def.'s Ex. L. Harvey Walden, senior labor relations specialist at the main post office, signed the letter informing Pierce-Daniels of the transfer. Def.'s Ex. N. Pierce-Daniels has not provided evidence suggesting that Patterson had any direct knowledge of Britton's motives or that Britton had made any admission to her. The Seventh Circuit has made clear that "[s]tatements by a non-decision-maker that amount to mere speculation as to the thoughts of the decision-maker" are not "the kind of 'smoking gun' evidence required for a direct inference of discriminatory intent." *Chiaramonte*, 129 F.3d at 397. This is because "[s]tatements by inferior employees are not probative of an intent to discriminate by the decisionmaker." *Id.* (citation omitted). Given Patterson's declaration that she did not have any first-hand knowledge of Britton or Walden's reasons for abolishing Pierce-Daniels job, Patterson's 2001 statement does not constitute direct evidence of retaliation.

Because she does not have direct evidence of retaliation or discrimination, Pierce-Daniels must proceed under the *McDonnell Douglas* burden shifting method of proof. For the purpose of summary judgment, Potter assumes that the job abolishment constituted an adverse employment action (Def.'s Mot. at 13 n.3), and Pierce-Daniels was performing her job satisfactorily. She also belongs to a protected class and filed several EEO complaints. Therefore, Pierce-Daniels can make out a prima facie case of retaliation or discrimination if she can show that the Postal Service did not abolish the clerk/steno positions of similarly situated employees who did not engage in protected activity or belong to a protected class. She points to two women whose clerk/steno positions were not abolished. Pat Osborne, who never filed an EEO complaint, was

not reassigned from her clerk/steno job in the Finance Department even though her position was not authorized on the OMSS list. Pl.'s Add'l Facts ¶¶ 27-28. Similarly, Bernice Brown was not reassigned from her clerk/steno job in the Processing and Distribution Unit even though her position was not authorized on the OMSS list either. *Id.* ¶ 30. But Pierce-Daniels fails to show that these women were similarly situated to her.

Osborne and Brown were not clerk/stenos in Pierce-Daniels' department and, therefore, all three women had different supervisors. Def.'s Reply at 6. "To meet her burden of demonstrating that another employee is 'similarly situated,' a plaintiff must show that there is someone who is directly comparable to her in all material respects." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002) (citations omitted). Once factor the Court usually must consider is "whether the employees 'dealt with the same supervisor.'" *Id.* (citing *Radue*, 219 F.3d at 617-18). Although the Seventh Circuit has found that the relevant factors in determining whether employees are similarly situated "depends on the context of the case," *Radue*, 219 F.3d at 617, in this case, as in *Radue* and *Patterson*, whether Pierce-Daniels, Osborne and Brown were similarly situated depends on whether they had the same supervisor. Specifically, there is no indication that Britton had any authority over the departments in which Osborne and Brown were working. The fact that managers in other departments did not abolish all positions not authorized by the OMSS list does not imply that Britton had a retaliatory or discriminatory motive for his decision to abolish Pierce-Daniels' job in compliance with the OMSS list. In sum, Osborne and Brown were not similarly situated to Pierce-Daniels because Britton was not their manager.

Because Pierce-Daniels has no direct evidence of retaliation or discrimination and cannot

make out a prima facie case, the Court need not inquire whether Pierce-Daniels can show that the Postal Service's proffered reasons for abolishing her position and reassigning her to Roseland Station are pretextual. The Court notes, however, that even if Pierce-Daniels had direct evidence or could make out a prima facie case of retaliation or discrimination, she still would not be able to prevail on her claim, because she has no evidence of pretext and cannot rebut the Postal Service's claim that it would have abolished her position regardless of any retaliatory motive. The Postal Service states that Pierce-Daniels' position was abolished because it was not authorized on the OMSS list and that she was reassigned to Roseland Station because she did not bid for any other position. Pierce-Daniels raises several arguments to try to show this explanation is pretextual, only two of which the Court will discuss. Her primary argument is that the Postal Service's reason must be pretextual because Osborne and Brown's clerk/steno positions were not abolished even though they were not authorized on the OMSS list. The Court recognizes that "[a] showing that similarly situated employees belonging to a different [gender, race, etc.] received more favorable treatment can also serve as evidence that the employer's proffered legitimate, nondiscriminatory reason for the adverse job action was a pretext for . . . discrimination." *Gordon*, 246 F.3d at 892 (citations and internal quotation marks omitted). However, as discussed above, Osborne and Brown's situations do not undercut the Postal Service's explanation because they had different managers than Pierce-Daniels.

Pierce-Daniels also argues that national restructuring could not be the reason for the decision because it did not make business sense to cut her position in customer service at a time when customer complaints were increasing. Pl.'s Reply at 16. But to establish pretext, it is not enough for the plaintiff to show a "business error." *Kulumani v. Blue Cross Blue Shield Assoc.*,

224 F.3d 681, 684 (7th Cir. 2000). "[T]he question is not whether the employer's reasons for a decision are '*right* but whether the employer's description of its reasons is *honest*.'" *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 677 (7th Cir. 1997) (citation omitted; emphasis in original). The increase in customer complaints does not suggest that the Postal Service's reliance on national restructuring was used as a pretext for discrimination or retaliation against Pierce-Daniels.

For these reasons, the Court denies Pierce-Daniels' motion for summary judgment on Claim ¶ 6M and grants Potter's motion for summary judgment on the retaliation and discrimination claims raised in ¶ 6M.

### 4. Claim ¶ 6N

Pierce-Daniels alleges that the Postal Service retaliated against her by denying her credit for a suggestion she made that was adopted. Potter moved for summary judgment, arguing that not being compensated for an employee suggestion does not constitute an adverse job action. Def.'s Mot. at 12. Pierce-Daniels responded only that "Defendant does not apparently move for summary judgment on this issue." Pl.'s Resp. at 18. The Court grants Potter's motion for summary judgment on ¶ 6N because Pierce-Daniels has failed to offer any evidence to rebut the motion.

### 5. Claim ¶ 6O

Pierce-Daniels claims she was retaliated against and discriminated against on the basis of disability, race and sex when Mary Ware reprimanded her for failing to follow directions. Pl.'s Resp. at 10. Potter moves for summary judgment on Claim ¶ 6O, arguing that Pierce-Daniels cannot make out a prima facie case of discrimination or retaliation because the reprimand does

17

not constitute an adverse employment action and she cannot point to more favorably treated similarly situated employees who did not file EEO complaints or who were not in her protected classes. Def.'s Reply at 12-14. Pierce-Daniels does not offer any direct or circumstantial evidence to support her claim, and she seems to concede she cannot make out a prima facie case of discrimination. Pl.'s Resp. at 11. Pierce-Daniels also concedes that a reprimand may not constitute an adverse employment action in discrimination cases, citing *Krause v. City of La Crosse*, which held that "a letter of reprimand is not an adverse employment action *unless the letter is accompanied by some other action, such as job loss or demotion.*" 246 F.3d 995, 1000 (7th Cir. 2001) (emphasis in original). In *Krause* the court was considering the plaintiff's retaliation claim when it determined that a letter of reprimand did not constitute an adverse employment action. Therefore, *Krause* supports Potter's contention that the reprimand was not an adverse employment action for purposes of Pierce-Daniels' retaliation claim either.

Relying on dicta from a Seventh Circuit case, Pierce-Daniels argues that the standard for determining what constitutes an adverse action in retaliation cases is more generous than the standard in discrimination cases, and, therefore, the reprimand is an adverse action for purposes of her retaliation claim. Pl.'s Resp. at 11. In *Herrnreiter v. Chicago Housing Authority*, the Seventh Circuit noted in dicta that what constitutes an adverse action for a retaliation case "may intentionally be broader" than what constitutes an adverse action in discrimination cases. 315 F.3d at 745-46. But Pierce-Daniels cites no authority for the proposition that a simple reprimand constitutes actionable retaliation, and there is no indication in *Herrnreiter* that the Seventh Circuit intended to overrule *Krause*. For these reasons, Pierce-Daniels cannot make out a prima facie case of discrimination or retaliation. The Court grants Potter's motion for summary

judgment on both the retaliation and discrimination claims in ¶ 6O.

## 6.    Claims ¶¶ 6P and 6Q

Pierce-Daniels claims her manager Linda Patterson retaliated and discriminated against her by denying eighty of the eighty-four hours of advance sick leave she requested on September 5, 1997. Because Pierce-Daniels does not present direct or circumstantial evidence of retaliation or discrimination, she must proceed under the *McDonnell Douglas* method. Pierce-Daniels has failed to provide any evidence that Patterson granted the advance sick leave requests of similarly situated employees who had not filed EEO complaints or were not in the protected class. Def.'s Reply at 15. Pierce-Daniels responds that she is unable to do so because Potter did not respond to her discovery request for "all requests for time off or for sick leave that were either directly or indirectly received by Linda Patterson from any employee from 1994 to present." Pl.'s Add'l Facts ¶ 107. Potter objected to her production request, stating that "it was irrelevant, overly broad, unduly burdensome and, most importantly, in violation of the Privacy Act since no protective order had been entered by the court." Def.'s Reply at 15. Pierce-Daniels did not seek a protective order until July 31, 2003, the day discovery was set to close, and the order, granted on August 4, pertained only to personnel information relevant to her claim regarding the abolishment of her clerk/steno job. *Id.* Pierce-Daniels failed to seek an order compelling production of all sick leave requests made to Patterson; she cannot create a genuine issue of fact today by saying there might be evidence relevant to her claim that was not produced. Because Pierce-Daniels cannot make out a prima facie case of retaliation or discrimination, the Court grants Potter's motion for summary judgment on both the retaliation and discrimination claims raised in ¶¶ 6P and 6Q.

## 7. Claim ¶ 6R

Pierce-Daniels claims that her workers compensation form was not sent to the workers compensation unit. She admits, however, that once properly forwarded, her compensation claim was denied. Pl.'s Resp. at 13. Pierce-Daniels gives no indication that her compensation claim was denied because it was forwarded late. For alleged retaliation to be actionable, the plaintiff "must complain of some action on the employer's part that causes her to suffer a real harm." *Johnson*, 325 F.3d at 902. Pierce-Daniels has not offered evidence that she suffered any harm from the initial failure to forward her workers compensation form. Therefore, Potter is entitled to summary judgment on both the retaliation and discrimination claims raised in ¶ 6R.

## 8. Claim ¶ 6S

Pierce-Daniels claims that Patterson retaliated, harassed and discriminated against her when she denied Pierce-Daniels sick leave and issued a warning to her for missing the five days for which she had requested leave. Pierce-Daniels filed a grievance, and the Postal Service retroactively gave her the advanced sick leave and rescinded the letter of warning. Pl.'s Add'l Facts ¶ 114. Pierce-Daniels has not claimed that the initial denial of sick leave and warning continued to harm her after the Postal Service reversed itself. Because her grievance was successful, she is not suffering a harm from the initial decision. *Campbell v. Henderson*, No. 00 C 6837, 2002 WL 1732361, at *7 (N.D. Ill. July 26, 2002) (finding Postal Service employee did not suffer an adverse employment action because leave approval was granted retroactively and letters of warning and reprimand were rescinded after employee filed a grievance). *Cf. Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 588 (11th Cir. 2000) ("A proposed action that is corrected as soon as the proper official is made aware of it and before it goes into effect, so that the

employee does not actually suffer any consequence, is not 'adverse.'"). Therefore, she cannot make out a prima facie case of retaliation or discrimination because she cannot show that she suffered from an adverse employment action. Furthermore, Pierce-Daniels cannot make out a claim of harassment because she has provided no evidence that Patterson acted based on Pierce-Daniels' race or sex. At best, the evidence suggests that Patterson and Pierce-Daniels felt great animosity toward each other. But personal disputes do not implicate Title VII. *Patton*, 276 F.3d at 339. Accordingly, the Court grants Potter's motion for summary judgment on the harassment, discrimination and retaliation claims raised in ¶ 6S.

9.    **Claim ¶ 6T**

Pierce-Daniels claims that on September 22, 1998, Patterson retaliated and discriminated against her by permitting her to take only 80 hours of vacation and not the 112 hours she had requested, telling Pierce-Daniels she was required to take her vacation in 40-hour blocks. Pierce-Daniels does not claim that she lost the thirty-two hours of vacation time she had accrued – she only complains that she was not allowed to take the thirty-two hours at the time she requested. The harm, if any, suffered by Pierce-Daniels because she could not take the additional thirty-two hours at the time she asked for is not the type of "real harm" contemplated by the Seventh Circuit in *Johnson* as an adverse employment action. 325 F.3d at 902. The inconvenience suffered by Pierce-Daniels is akin to that felt by an employee when a manager changes the employee's schedule, which the Seventh Circuit has held does not constitute an adverse employment action. *See Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc.*, 254 F.3d 644, 654 (7th Cir. 2001). The Court therefore grants Potter's motion for summary judgment on the retaliation and discrimination claims raised in ¶ 6T.

21

**10. Claim ¶ 6U**

Pierce-Daniels claims that on December 27, 1999, she was retaliated and discriminated against and harassed when her request to go to the medical unit or be placed on light duty because her feet were swollen was denied and she was sent home instead.[3] She argues this is an adverse action because if she had been allowed to go to the medical unit, her time there would be counted as time on the job whereas when she was sent home, she had to use sick leave. Pl.'s Resp. at 15; Pl.'s Add'l Facts ¶ 134. But Pierce-Daniels filed a grievance, which she won. She has not shown that she suffered any lingering harm from the initial decision to send her home. Therefore, she cannot make out a prima facie case of retaliation or discrimination because she cannot show that she suffered from an adverse employment action. *Campbell*, 2002 WL 1732361, at *7. *Cf. Gupta*, 212 F.3d at 588.

To prevail under her hostile work-environment theory, Pierce-Daniels "must establish that, *inter alia*, the environment of which she complained was objectively offensive. A workplace is objectively offensive when 'a reasonable person would find [it] hostile or abusive." *Rogers*, 320 F.3d at 752 (citations omitted). Pierce-Daniels has neither argued that her workplace was objectively offensive nor provided evidence that Patterson acted based on Pierce-Daniels' race or sex. Accordingly, the Court grants Potter's motion for summary judgment on the harassment, retaliation and discrimination claims raised in ¶ 6U.

---

[3] In her Memorandum in Opposition to Defendant's Motion for Summary Judgment, Pierce-Daniels says this allegation falls under ¶ 6T. Pl.'s Resp. at 15. However, after reviewing her Fourth Amended Complaint and answers to defendant's interrogatories (Def. Ex. A), the Court concludes that this allegation – that Pierce-Daniels was sent home rather than to the medical unit for her swollen feet – is actually raised in ¶ 6U of her Fourth Amendment Complaint.

11.  **Claim ¶ 6V**

Pierce-Daniels claims that she was retaliated and discriminated against when Patterson stated that "she was going to get her." Pl.'s Add'l Facts ¶ 136. Pierce-Daniels states that on Jan. 21, 2000, fellow employee Earl Hicks told her that Patterson had said she was going to "get" Pierce-Daniels for filing an OSHA complaint regarding doors that were barred with padlocks at the Roseland Station. *Id.* Pierce-Daniels does not claim, however, that Patterson carried out this threat. "An unfulfilled threat, which results in no material harm, is not materially adverse." *Ajayi v. Aramark Business Services, Inc.*, 336 F.3d 520, 531 (7th Cir. 2003) (finding unfulfilled threat of demotion was not an adverse action in discrimination case). Potter is entitled to summary judgment on all claims of retaliation and discrimination raised in ¶ 6V because Pierce-Daniels cannot make out a prima facie case.

12.  **Claim ¶ 6W**

Pierce-Daniels claims that Patterson retaliated and discriminated against her when she denied her request for her work schedule to be changed for the month of February 2001. Pl.'s Add'l Facts ¶ 143. She further claims that she was retaliated and discriminated against when she was charged for taking leave without permission for February 2 even though she sent a fax from her doctor explaining she was not able to work on February 2. *Id.* ¶¶ 139-40. Because the Seventh Circuit has held that changing an employee's schedule does not constitute an adverse employment action in retaliation cases, *Hoffman-Dombrowski*, 254 F.3d at 654, denying a change in schedule does not qualify either. And even if a broader standard of adverse action applies in retaliation cases, as discussed earlier some showing of "real harm" is required. *Johnson*, 325 F.3d at 902. In this instance there was none. Therefore, Potter is entitled to summary judgment

23

on the retaliation and discrimination claims raised in ¶ 6W.

### 13. Claim ¶ 6X

Pierce-Daniels alleges she was retaliated and discriminated against when she was not given "retreat rights" to a general clerk position that was available in 2000 in the BME unit, from which she had been transferred in 1994 when her clerk/steno position was abolished. On October 18, 2000, the Postal Service advertised a vacancy for a general clerk in BME. Pl.'s Add'l Facts ¶ 144. Pierce-Daniels bid on the job, but the position was awarded to an employee who had less seniority but met the typing requirements. Def.'s Facts ¶ 30. John Richardson, the manager of human resources for the Chicago Performance Cluster, testified at his deposition that to get a general clerk position, Pierce-Daniels had to pass a typing test but did not do so. Richardson Dep. at 67-68. In fact, Pierce-Daniels admitted that she did not take a typing test in relation to her bid for the 2000 opening. Pl.'s Dep. at 107.

On October 16, 2002, the Postal Service listed a job vacancy for a general clerk, in a unit unspecified by Pierce-Daniels. Pl.'s Add'l Facts ¶ 146. On October 24, 2002, Pierce-Daniels sent a letter to her union and the Postal Service, asking whether she had retreat rights. *Id.* Because Pierce-Daniels had filed an EEO complaint on October 18, 2001, the Postal Service said it was precluded from discussing Pierce-Daniels' retreat rights with her since they were at issue in a pending case. Def.'s Reply to Pl.'s Add'l Facts ¶ 147.

The Court need consider whether Pierce-Daniels has made out a prima facie case to support her claim only if she was, in fact, denied retreat rights. According to the Agreement between the Postal Service and its unions,

> Such reassigned full-time employee retains the right to retreat to the section from

24

> which withdrawn only upon the occurrence of the first residual vacancy in the
> salary level after employees in the section have completed bidding. Such bidding
> in the section is limited to employees in the same salary level as the vacancy.
> Failure to bid for the first available vacancy will end such retreat right.

Agreement Art. 12.5.C.4(c). The Postal Service contends that a reassigned employee has retreat

rights back to the position she held prior to the reassignment if that position is reestablished.

Def.'s Facts ¶ 28. It argues that Pierce-Daniels never had retreat rights to a general clerk position

because she had held a different position – clerk/steno · prior to her reassignment. *Id.* ¶ 29.

Pierce-Daniels interprets the Agreement differently. She argues that she has retreat rights to any

position in BME – not just a clerk/steno position in BME. Pl.'s Resp. at 17. But if the Court

accepted her interpretation, Pierce-Daniels' claim would still fail because she has not provided

evidence from which a jury could find that she was denied retreat rights. According to the

Agreement as she interprets it, she would only have retreat rights to the first residual vacancy –

that is a position still vacant after employees already in BME have bid on it – at her salary level

that opened up after her reassignment. Pierce-Daniels has not presented any evidence that the

October 2000 listing for a general clerk in BME was (1) a residual vacancy, (2) the first residual

vacancy to arise in that unit in the six years since her clerk/steno position was abolished and she

was reassigned to Roseland Station, or (3) at her salary level. Even if the 2000 listing was not a

residual vacancy and, therefore, Pierce-Daniels' retreat rights survived into 2002, she cannot

establish that she was denied her retreat rights on the 2002 clerk opening because she has

provided no evidence that the position was within her section or that it was a residual vacancy.

Without such evidence, there is no basis on which a jury could find that Pierce-Daniels was

denied the rights outlined in the Agreement. The Court therefore grants Potter's motion for

summary judgment on the retaliation and discrimination claims raised in ¶ 6X.

14.    **Claim ¶ 6Y**

Pierce-Daniels alleges she was retaliated and discriminated against and harassed by Patterson when she was referred to the Postal Service's Employee Assistance Program ("EAP") after she and Patterson had a workplace altercation. Because the facts relevant to claims ¶¶ 6Y and 6Z are interrelated and part of a single narrative, the Court will set forth facts relevant to ¶ 6Z here even though they are not necessary for deciding claim ¶ 6Y. Pierce-Daniels states that on December 18, 2001, Patterson said to her, "I dare you to hit me." Pl.'s Add'l Facts ¶ 154. Pierce-Daniels called the Chicago Postal Police and, when they did not respond, called the Chicago police. *Id.* ¶ 155. Patterson decided to refer Pierce-Daniels to the EAP, but Pierce-Daniels did not attend her scheduled appointment. *Id.* ¶ 156; Def.'s Reply to Pl.'s Add'l Facts ¶ 156. There is no evidence that the EAP had any disciplinary component.

Less than a week after this incident, the Postal Service sent a Threat Assessment Team to Roseland Station to investigate the situation. Def.'s Facts ¶ 33. The following January, Dr. Akinyinka Akinyele, the District Manager for the Postal Service's Chicago Performance Cluster, met with Pierce-Daniels and Patterson and suggested that they be reassigned to different stations "until the issue could be sorted out." *Id.* ¶ 34. But neither woman was transferred because they both "expressed a strong desire to remain at Roseland, and agreed to work together." *Id.* An outside consultant was brought in to help Patterson improve her human relations skills. *Id.* ¶ 35. A work climate assessment revealed that "[t]he majority of the employees at Roseland who participated in the survey rated their work environment as difficult, tense or hostile, for a variety of reasons." *Id.* In July 2002, Pierce-Daniels and Patterson met again with Akinyele about their

26

continuing conflict. *Id.* ¶ 36. He made the decision to separate the two women. *Id.* The Postal Service permanently reassigned Patterson to another station effective August 2, 2002. *Id.* ¶ 37. On August 5, 2002, Pierce-Daniels was temporarily reassigned to the Englewood Station as a full-time clerk. *Id.* ¶ 38. She filed a grievance in response to her reassignment. *Id.*

In claim ¶ 6Y Pierce-Daniels seems to allege that her referral to the EAP constituted retaliation and discrimination. *See* Pl.'s Resp. at 18. As with many of her other claims, Pierce-Daniels cannot make out a prima facie case of retaliation or discrimination because the referral to the EAP was not an adverse employment action. The Seventh Circuit has held that placement in a coaching program to improve the plaintiff's job performance does not constitute an adverse employment action – even when participation is mandatory. *See Williams v. Bristol-Myers Squibb, Co.*, 85 F.3d 270, 273 (7th Cir. 1996). From the evidence before the Court, it seems that the EAP's purpose was to help address the work environment problem Pierce-Daniels faced. In fact, Pierce-Daniels may have enjoyed a benefit from participating in the program if she had chosen to do so. In any event, she suffered no harm from being referred. The referral simply does not constitute an adverse employment action for purposes of any of her claims.

Pierce-Daniels also seems to be alleging harassment when she states that "she was placed in a threatening environment when Patterson stated, 'I dare you to hit me.'" Pl.'s Resp. at 18. The Court does not condone Patterson's behavior. However, as the Court has noted previously, "rude, arrogant, or boorish behavior at work" alone does not create an actionably hostile work environment. *Patton*, 276 F.3d at 339. To be actionable under Title VII, Patterson's behavior must have been motivated by Pierce-Daniels' status as a member of a protected class. *Berry*, 260 F.3d at 808. Pierce-Daniels has not provided any evidence that Patterson acted out of animus

27

toward African-Americans, women, or disabled people. At most, Pierce-Daniels has provided evidence that Patterson disliked her. But "personality conflicts between employees are not the business of the federal courts." *Vore*, 32 F.3d at 1162. Accordingly, the Court grants Potter's motion for summary judgment on the retaliation, discrimination and harassment claims raised in ¶ 6Y.

## 15.    Claim ¶ 6Z

In claim ¶ 6Z Pierce-Daniels alleges that the Postal Service retaliated and discriminated against her when it transferred her from Roseland Station to defuse the situation with Patterson. Potter moved for summary judgment, arguing that even if Pierce-Daniels could make out a prima facie case of retaliation or discrimination, she could not prevail because the Postal Service had a non-discriminatory and non-retaliatory explanation for its decision. Def.'s Mot. at 16-17. The Postal Service states that it temporarily transferred Pierce-Daniels "after it was determined that both she and her manager were continuing to cause conflict within an already volatile workplace at the Roseland Station." *Id.* at 16. Pierce-Daniels does not contest this version of events. *See* Pl.'s Resp. to Def.'s Facts ¶¶ 31-38. She has failed to offer any evidence to suggest the explanation for her transfer offered by the Postal Service is pretextual. Accordingly, Potter is entitled to summary judgment on the retaliation and discrimination claims raised in ¶ 6Z.

### Conclusion

For the reasons stated above, the Court denies Pierce-Daniels' partial motion for summary judgment [docket # 47] and grants Potter's motion for summary judgment in its entirety [docket # 49]. The Clerk is directed to enter judgment in favor of the defendant. The trial date of January 5, 2004 is vacated.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: Nov. 7, 2003